UN ITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TERESA A. MORRING and | : |
| DESHAUNIA Q. SNOWDEN, as | : |
| PARENTS and NEXT FRIENDS of : | |
| QUINTON ELIJAH SNOWDEN | : |
| 5861 Poplar Hall Drive | : |
| Apt. 23B | : |
| Norfolk, Virginia 23502 | : |
| | : |
|     Plaintiffs, | : |
| | : |
|     v. | :    Case No. |
| | : |
| CHILDREN'S NATIONAL MEDICAL | : |
| CENTER | : |
| serve: | : |
|     C.T. Corporation System | : |
|     1015 15th Street, N.W., Ste. 1000 | : |
|     Washington, D.C.20005 | : |
| | : |
|     Defendant | : |

## COMPLAINT

COMES NOW the Plaintiffs, Teresa A. Morring and Deshaunia Q. Snowden as Parents and

Next Friends of Quinton Elijah Snowden, by and through their attorneys, Anthony G. Newman,

Esq., and Ira Sherman, Esq., respectfully represents as follows:

## COUNT I
### (*Medical Negligence- Child's Claims*)

1.    Jurisdiction of this Court is based on diversity of jurisdiction and the amount in

controversy exceeds the jurisdictional limit.

2.    Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden are the natural parents of

the minor Plaintiff, Quinton Elijah Snowden and residents of the Commonwealth of Virginia.

3.      Children's National Medical Center, was at all relevant times, and is at the present, a District of Columbia hospital doing business in the District of Columbia.

4.      At all relevant times herein, Children's National Medical Center, was a duly licensed and accredited health care facility, which held itself out to the public as an institution competent to provide health care to infants including, but not limited to, extracorporeal membrane oxygenation (ECMO), neonatal services, resuscitation services, and pediatric care, and to provide these services, *inter alia*, within the District of Columbia.

5.      At all relevant times herein, Plaintiff Quinton Elijah Snowden was treated by the agents, employees and/or servants of Children's National Medical Center, in the District of Columbia, all of whom were acting within the scope of their agency and/or employment.

6.      On September 11, 2005, minor Plaintiff Quinton Elijah Snowden was presented to Defendant Children's National Medical Center, for treatment of ventricular hypertrophy developed as a result of being an infant of a diabetic mother.

7.      On or about September 14, 2005, minor Plaintiff was placed on an ECMO device as a temporary bypass system to enhance his respiratory status until his cardiac condition resolved.

8.      The ECMO device is a compilation of smaller component devices which include: vascular access catheters, connecting tubing, a servo-regulating blood pump (artificial heart), an artificial lung, a heat exchanger and other related monitoring devices combined together by Defendant at the time of usage.

9.      Upon information and belief, one or more of these smaller component devices which made up the ECMO unit, was/were not FDA approved and were Class III devices.

10.     The collection of component devices which made up the ECMO device and/or the ECMO device in its entirety, at Defendant's hospital, which was used on minor Plaintiff had not been FDA approved.

11.     On or about September 15, 2005, Plaintiff Quinton Elijah Snowden's ECMO device and /or the component catheter became dislodged; immediately causing the minor Plaintiff to suffer hypoxia from a cardio-respiratory arrest. Despite resuscitation efforts his condition remained critical and he was hypoxic for approximately 13 minutes (oxygen saturation was in the 20% range versus the normal 100% range).

12.     Defendant Children's National Medical Center, by and through its servants, agents and/or employees, were negligent in their management, care and treatment of minor Plaintiff Quinton Elijah Snowden on September 15, 2005 and continuing thereafter, including but not limited to the following particulars:

      a.     negligent performance of examinations and the evaluations;

      b.     negligent creation of an unreasonably dangerous and defectively designed ECMO device which had, inter alia, a catheter which could easily be dislodged;

      c.     negligent failure to properly secure the ECMO catheter;

      d.     negligent decannulation of infant's ECMO's catheter which oxygenated the blood of the infant;

      e.     negligent and inadequate resuscitation efforts;

      f.     negligent manipulation of infant allowing the ECMO catheter to become dislodged;

g.    negligent delay in recognizing that the ECMO catheter was displaced;

h.    negligent delay in replacement of the ECMO catheter and failing to re-establish the bypass system for 13 minutes;

i.    negligent decision to perform an embolization utilizing a Class III;

medical device that had not been approved and was thus illegal; and,

j.    negligent performance of an ECMO without obtaining an investigational device exemption (IDE), without any other exemption or waiver from the Federal Government or its agencies and without providing notice to said entities of its intent to use such a device;

k.    negligent technique and/or negligent selection of an unapproved, illegal, Class III device(s) employed in the performance of ECMO;

l.    negligent failure to submit the use of an "investigational" Class III device to Defendant Children's National Medical Center's appropriate research governing body and/or Institutional Review Board (IRB) prior to its usage;

m.    negligent supervision and/or monitoring by Defendant of the ordering, invoicing and use of illegal Class III devices in patients within the institution by its agents, servant, officers, employees and/or staff.

n.    negligent failure to document precisely the combination of devices used in the ECMO procedure on minor Plaintiff;

o.    negligence *per se* by violating  21 U.S.C.§360c (a)(II), and 21 C.F.R. Ch. 1 § 812.20(a)(2));

p.    negligence *per se* by violating  21 U.S.C.§331 (a), (b), (c), (g) and (k))

q.    negligence *per se* by violating  21 C.F.R. § Ch. 1 812.20(a)(2))

-4-

      r.       negligent failure to follow Defendant's own ECMO guidelines;

      r.       Defendant were otherwise negligent; and,

      s.       Plaintiffs may also rely on *res ipsa loquitur*.

13.     As a direct and proximate result of the aforesaid acts of negligence by the agents, employees and/or servants of the Children's National Medical Center, minor Plaintiff suffered a cardio-respiratory arrest causing severe permanent and disabling damage to his body, including but not limited to diffuse brain damage in the form of hypoxic ischemic encephalopathy, spasticity, seizures, cortical visual loss, cerebral palsy, global developmental delays  as well as other neurological and physical impairments leaving him completely and permanently disabled; he has endured in the past, and will endure in the future, severe pain, suffering, and humiliation; his disabilities will cause him to sustain expenses for medical, psychological, nursing, rehabilitative, educational, pharmaceutical services, as well as life long, around-the-clock care and attention for all activities of daily living; as well as expenses for specialized equipment, vehicles, home modification and other supplies.

WHEREFORE, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Next Friends of Quinton Elijah Snowden, demand judgment of and against Defendant Children's National Medical Center, in the full sum of One Hundred Million Dollars ($100,000,000.00), plus costs and interest.

## COUNT II
### (*Lack of Informed Consent*)

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth

above and further state as follows:

14.    Defendant never disclosed, *inter alia*, its intent to use an unapproved Class III device(s), during the cardiopulmonary support, in a combination manufactured at the time of the procedure which had never been tested previously and could never be tested and could never be duplicated.

15.    Defendant never described the high failure rates for decannulations utilizing ECMO and/or provided Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, with a choice of available alternative approved and/or legal procedures with legal devices.

16.    Defendant never disclosed to the Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, the fact that the use of unapproved and untested devices, which made up the ECMO device, was experimental, and never disclosed that it had not been approved by Children's National Medical Center 's IRB, which was required for any experimental procedure by the Hospital's own rules and regulations and/or never disclosed results of said monitoring.

17.    Had Plaintiffs been informed of, *inter alia,* the aforesaid facts, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, would not have consented to the ECMO procedure, because they would have had knowledge that: a) there were alternative treatments available that had been FDA approved, b) those alternate treatments had risks equal to or less with this particular ECMO device, c) the risks and dangers inherent with the ECMO device, d) the ECMO device was never previously tested in the combination used; could not be duplicated, and whose efficacy was never tested, e)

the Defendant intended on utilizing unapproved medical device(s) to perform the ECMO, f) Defendant were unauthorized to use the device and that the g) the device(s) had an unacceptable failure rates.

18.     Defendant had not authorized and/or created a proper informed consent form for human experimentation that set forth, *inter alia*: a) the purpose of the treatment, b) the fact that the decision to use the experimental device was purely voluntary, c) the availability of alternative devices and/or treatments, d) that the use of the experimental device would not be charged to the patient, and e) a full description of the risks and benefits of the proposed treatment, f) the number of persons in the study, and g) the failures during present and prior usage; without said information,  Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, could not provide proper consent and the Defendant was thus not authorized to provide said treatments.

WHEREFORE, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, demand judgment of and against Defendant Children's National Medical Center, in the full sum of One Hundred Million Dollars ($100,000,000.00) plus costs and interest.

### COUNT III
(*Strict Products Liability*)

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above, and further state as follows:

19.     Upon information and belief one or more of the devices that made up the component parts of the ECMO device used on minor Plaintiff was/were an unapproved Class III device(s).

20.     The collection of devices which Defendant created and/or manufactured, which made up the component parts of the ECMO device was not FDA approved.

21.     A Class III device is one for which the Food and Drug Administration ("FDA") does not have "reasonable assurance" of its "safety and effectiveness." See 21 U.S.C. § 360e(a).

22.     A Class III device is unreasonably dangerous requiring restrictions on its use and those that are authorized to use it.

23.     The only acceptable process by which Class III devices can be marketed in the United States is by an approved application to the FDA, known as an application to obtain Pre-Market Approval (PMA) or pursuant to a §510(k)(substantial equivalence) application. See 21 U.S.C. § 360c(a)(II).

24.     No application for PMA was filed with the FDA, and no PMA was obtained at anytime prior to the date of Defendant's attempted embolization of the minor Plaintiff.

25.     The only exemption which allows a physician and/or a hospital to treat a patient with a Class III device is an investigational device exemption (IDE). See 21 U.S.C. § 360j(g)(1).

26.     An application to obtain an IDE was never submitted by any Defendant.

27.     The application for IDE which was submitted by other practicioners had been denied and/or withdrawn.

28.     21 U.S.C. § 351(f)(1)(B)(I) defines a Class III device that does not have an approved, "application for Pre-Market Approval," as adulterated.

29.    21 U.S.C. § 352(q) defines a Class III device that is "used in violation of regulations," as misbranded.

30.    At all relevant times herein, Defendant Children's National Medical Center, acting by and through its agents, servants and/or employees, combined several devices, one or more of which are believed to be Class III device(s) into an ECMO device thereby creating and manufacturing a new "medical device." This "medical device" was defectively designed and unreasonably dangerous, in that, *inter alia*:

a.    the ECMO device was manufactured without any specifications, controls and/or safe manufacturing procedures;

b.    the ECMO device was manufactured without any record keeping to permit reconstruction of its components and the percentage of each component;

c.    the ECMO device was never submitted for approval to the Food and Drug Administration (FDA);

d.    one or more of the component parts of the ECMO device was/were not approved by the FDA;

e.    the ECMO device's catheter was designed and or installed in such a manner that it could easily be dislodged; and,

f.    the ECMO device in the combination used at the time at issue, had never been formally tested.

31.    The defect(s) in the ECMO device and/or its smaller component devices existed at the time the device was used on minor Plaintiff.

32.    The ECMO unit was unreasonably dangerous, defectively designed and

adulterated.

33.    Defendant Children's National Medical Center failed to warn purchasers and users, including the Plaintiffs, of the unreasonably dangerous, defective and/or unadulterated condition of the ECMO device it created for use on minor Plaintiff.

34.    At no time herein did Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, have the ability to use the ECMO device in a manner other than what was intended by Defendant since it was at all times under the complete control of Defendant.

35.    As a direct and proximate result of the Defendant's use of the aforesaid device, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, suffered injuries and damages as set forth above.

WHEREFORE, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, demand judgment of and against Defendant, Children's National Medical Center, in the full sum of One Hundred Million Dollars ($100,000,000.00) plus costs and interest.

### COUNT IV
*(Breach of Implied Warranty of Fitness for a Particular Purpose)*

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above, and further states as follows:

36.    At all relevant times herein, Defendant was aware of the particular purpose for which Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, would receive the ECMO device and its component parts, for the

-10-

purpose of cardiopulmonary support.

37.     At all relevant times herein, Defendant, acting by and through its agents, servants, and/or employees, impliedly and/or by operation of law warranted that the medical device, ECMO, was reasonably fit and suitable for the particular purpose for minor Plaintiff was receiving it.

38.     Defendant, acting by and through its agents, servants, and/or employees, breached the implied warranty of fitness for a particular purpose by designing, producing, assembling, and/or selling the medical device, ECMO, at issue in an unreasonably dangerous, defective and/or adulterated condition, as set forth above.

39.     As a direct and proximate result of the Defendant's use of the aforesaid product, minor Plaintiff Quinton Elijah Snowden, suffered injuries and damages as set forth above.

WHEREFORE, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, demand judgment of and against Defendant, Children's National Medical Center, in the full sum of  One Hundred Million Dollars ($100,000,000.00) plus costs and interest.

## COUNT V
(*Breach of Express Warranties*)

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above, and further state as follows:

40.     At all relevant times herein, Defendant, acting by and through its agents, servants, and/or employees, expressly warranted to Plaintiffs that the "medical device" at issue was reasonably fit and safe for the intended, ordinary, foreseeable, and particular purpose of

cardiopulmonary support of minor Plaintiff.

41.     At all relevant times herein, Defendant's express representation to the adult Plaintiffs was the basis of the bargain between the Defendant, and the adult Plaintiffs, in that, *inter alia*, the Plaintiffs would not have agreed, that the medical device be used on the person of minor Plaintiff,  but for Defendant's representation that it was reasonably safe and effective.

42.     Defendant, acting by and through its agents, servants, and/or employees, breached the express warranty of fitness for a particular purpose by designing, producing, assembling, selling, and/or otherwise distributing the medical device at issue in an unreasonably dangerous, defective and/or adulterated condition, as set forth above.

43.     As a direct and proximate result of the Defendant's aforesaid product, minor Plaintiff Quinton Elijah Snowden suffered injuries and damages as set forth above.

WHEREFORE, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden as Parents and Next Friends of Quinton Elijah Snowden, demand judgment of and against Children's National Medical Center, in the full sum of One Hundred Million Dollars ($100,000,000.00) plus costs and interest.

<u>**COUNT VI**</u>
*(Fraud)*

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above, and further state as follows:

44.     Defendant Children's National Medical Center, acting by and through its agents, servants, and/or employees, made and/or fraudulently withheld representations of material facts which were false and/or the falsity of what was known or should have been known to Defendant at

the time the representations were made.

45.     Defendant's fraud included, but was not limited to, failing to advise the Plaintiffs that:

a.     Defendant intentionally did not seek and/or obtain approval from the FDA to use the individual experimental device(s), that made up the components of the ECMO device, and/or did not seek and/or obtain approval from the FDA to use the complete ECMO device and Defendant did not advise Plaintiffs of that fact;

b.     Defendant Children's National Medical Center, did not seek and/or obtain an IDE for use of the(se) experimental device(s);

c.     the legal status of the ECMO device;

d.     that an untested device would control the cardiopulmonary support of minor Plaintiff; and that,

e.     the device intended to be used was created and/or manufactured by Defendant Children's National Medical Center, by combining other approved and/or unapproved devices in a combination that had not been determined, and had never been tested at the time of, or at any time before, the manufacture and/or use of the product manufactured during the procedure.

46.     The representations and/or omissions were made by Defendant for the purpose of defrauding each of the Plaintiffs into agreeing to the ECMO procedure to further the advances of the ECMO practice at Children's National Medical Center.

47.     Defendant knew or should have known that the Plaintiffs would rely upon said representations and/or omissions and that said representations and/or omissions were material to a knowing and intelligent decision.

48.     Based on the special relationship which exists between each Plaintiffs and each Defendant, Defendant had a duty to disclose the information concealed from the Plaintiffs.

49.     Defendant's deceptive practices concealed, *inter alia*, the truth about the legal status of the components and the combination of components of the device Defendant intended to manufacture and use on the person of minor Plaintiff and how it was being acquired, combined, and to be used.

50.     As a direct and proximate result of the Defendant's fraud, minor Plaintiff Quinton Elijah Snowden, suffered injuries and damages as set forth above.

WHEREFORE, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, demand judgment of and against Defendant, Children's National Medical Center, in the full sum of One Hundred Million Dollars ($100,000,000.00) plus costs and interest.

## COUNT VII
*(Negligence Per Se - Violation of 21 U.S.C. §360c (a)(II), and 21 C.F.R. Ch. 1 § 812.20(a)(2))*

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above and further state as follows:

51.     Upon information and belief, the ECMO devices and one or more of its component parts were, and continue to be, Class III devices as defined by 21 C.F.R. Ch. 1 §§ 870.1300; 870.2300; 870.4200; 870.4210; 870.4220; 870.4240; 870.4250; 870.4260; 870.4310;

-14-

870.4330; 870.4350; 870.4360; and 870.4370, and as such, are unapproved for any use in the United states (Classes I and II are "approved" devices).

52.    A Class III device is one for which the Food and Drug Administration ("FDA") does not have "reasonable assurance" of "safety and effectiveness." See 21 U.S.C. §360e(a).

53.    The only acceptable process by which Class III devices can be marketed in the United States is by an approved application to the FDA, known as an application to obtain pre-market approval (PMA).  See 21 U.S.C. § 360c(a) (II).

54.    No application for PMA was filed with the FDA, and no PMA was obtained at anytime prior to the date the ECMO device was used upon the person of the minor Plaintiff.

55.    The only exemption which allows a physician and/or a hospital to treat a patient with a Class III device is an investigational device exemption (IDE).  See 21 U.S.C. § 360j(g)(1).

56.    To obtain an IDE, a physician or institution must become a "sponsor" and "submit an application to FDA." See 21 C.F.R. Ch. 1 § 812.20(a)(2).

57.    An application to obtain an IDE was never submitted by Defendant.

58.    The FDA's classification of Class III devices prohibited their production, distribution and medical use of those devices in the United States.

59.    21 U.S.C. § 351(f)(1)(B)(I) defines a Class III device that does not have an approved, "application for pre-market approval," as adulterated.

60.    21 U.S.C. § 352(q) defines a Class III device that is "used in violation of regulations," as misbranded.

61.    Defendant Children's National Medical Center and its employees, agents and/or servants, violated the aforesaid sections by manufacturing, placing into the stream of commerce

and employing the unapproved Class III device(s).

62.     The aforesaid statutes represent the standard of care and were designed, *inter alia*, to promote the health and safety of the public by only allowing devices into the Unites States and into patients that have gone through the necessary regulatory process and had met the stringent requirements of the FDA.

63.     As a direct and proximate result of Defendant's violations of the aforesaid statutes, minor Plaintiff Quinton Elijah Snowden was treated with an unapproved, misbranded, mislabeled devises and suffered permanent brain injury.

64.     The brain injury suffered by minor Plaintiff Quinton Elijah Snowden would not have occurred had the Defendant not violated the aforesaid statues.

WHEREFORE, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, demand judgment of and against Children's National Medical Center, in the full sum of One Hundred Million Dollars ($100,000,000.00) plus costs and interest.

### COUNT VIII
*(Negligence Per Se - Violations of 21 U.S.C. §331 (a), (b), (c), (g) and (k))*

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above and further state as follows:

65.     21 U.S.C. §331 entitled "Prohibited Acts" sets forth in subparagraph (a) that it is a violation of the statute to allow, "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded."

-16-

66.     21 U.S.C. §331(b) states that it is a violation of the statute to allow, "[t]he adulteration or misbranding of any food, drug, device, or cosmetic in interstate commerce."

67.     21 U.S.C. §331(c) states that it is a violation of the statute to allow, "[t]he receipt in intestate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise."

68.     21 U.S.C. §331(g) states that it is a violation of the statute to allow, "[t]he manufacture within any Territory of any food, drug, device, or cosmetic that is adulterated or misbranded."

69.     21 U.S.C. §331(k) states that it is a violation of the statute to allow, "[t]he alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded."

70.     Defendant violated the aforesaid "Prohibited Acts" subsections, in that they:

(a)     introduced and or caused the introduction of, ECMO, believed to be both adulterated and misbranded devices, into interstate commerce,

(b)     adulterated the approved ECMO devices by combining approved and/or unapproved devices together,

(c)     received a misbranded and adulterated device,

(d)     manufactured a "new" Class III adulterated and misbranded device when it combined the devices,

71.     The aforesaid statutes, which represent the standard of care, were designed, *inter*

*alia*, to promote the health and safety of the public by only allowing devices into the Unites

States and into patients that have gone through the necessary regulatory process and had met the

stringent requirements of the FDA.

72.     As a direct and proximate result of Defendant's violations of the aforesaid

statutes, minor Plaintiff Quinton Elijah Snowden received treatment with an unapproved,

misbranded, mislabeled device or devices and suffered permanent brain injury.

73.     The brain injury suffered by minor Plaintiff Quinton Elijah Snowden, would not

have occurred had the Defendant not violated the aforesaid statues.

WHEREFORE, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and

Next Friends of Quinton Elijah Snowden, demand judgment of and against Defendant,

Children's National Medical Center, in the full sum of One Hundred Million Dollars

($100,000,000.00) plus costs and interest.


## COUNT IX
*(Negligence Per Se - Violation of 21 C.F.R. § Ch. 1 812.20(a)(2))*

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth

above and further state as follows:

74.     21 C.F.R. Ch. 1 § 812.20(a)(2), discussing investigational device exemptions,

mandates that, "A sponsor shall not begin an investigation for which FDA's approval of an

application is required until the FDA has approved the application."

75.     21 C.F.R. Ch. 1 §812.1 states that the purpose of the development of

investigational device exemptions ("IDEs") is, *inter alia*, "the protection of public health and

-18-

safety."

76.    Defendant Children's National Medical Center, and its employees, namely their administrators, board of directors, purchasing department, and staff physicians, violated 21 C.F.R. Ch. 1 § 812.20(a)(2), by compiling component devices into an unapproved ECMO device on minor Plaintiff Quinton Elijah Snowden without an IDE.

77.    As a direct and proximate result of Defendant's violation of 21 C.F.R. Ch. 1 § 812.20(a)(2), which represents the standard of care and was designed protect health and safety, minor Plaintiff Quinton Elijah Snowden suffered the injuries and damages set forth above.

WHEREFORE, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, demand judgment of and against Defendant Children's National Medical Center, in the full sum of One Hundred Million Dollars ($100,000,000.00) plus costs and interest.

## COUNT X
### (*Punitive Damages*)

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above and further state as follows:

78.    Defendant Children's National Medical Center, acting by and through its agents, servants and/or employees, including their administrators, board of directors, financial directors, purchasing department and staff physicians, willfully and maliciously manufactured and/or allowed the manufacture, use and creation of unapproved and un-exempted Class III devices *to wit*: ECMO device and its component devices on multiple occasions, including into Plaintiffs, with full knowledge that the devices' safety and/or the effectiveness had never been and could not be tested.

-19-

79. Defendant recklessly and wantonly obtained and combined the component parts necessary to manufacture the ECMO device and then use it as described above.

80. Defendant recklessly and wantonly permitted the manufacture of the ECMO device and its use without any prior scientific testing and/or attempts to preserve the precise devices used in combination to permit "post hoc" testing.

81. Defendant Children's National Medical Center, acting by and through its agents, servants and/or employees, including their board of directors, administrators, other financial directors, purchasing department and staff physicians, acted with reckless disregard for the safety of their patients when they repeatedly ratified the conduct of its physicians by continuing to order, purchase and stock and provide the component parts of the ECMO device with the knowledge that they would be combined in an unscientific fashion and used on patients, including the Plaintiffs.

82. Defendant intentionally performed all of the aforesaid without any provision for review of Children's National Medical Center's manufacturing process, method of performance when utilizing the product and/or success/failure rate and/or an analysis of the reasons therefore.

83. Defendant failed to provide the necessary information and data to the Extracorporal Life Support Organization to determine the device(s) safety and efficacy such reporting would have uncovered the defect(s) in the device prior to its usage on minor Plaintiff.

WHEREFORE, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, as Parents and Next Friends of Quinton Elijah Snowden, demand judgment of and against Defendant, Children's National Medical Center, in the full sum of One Hundred Million Dollars ($100,000,000.00) plus costs and interest.

## COUNT XI

(*Parents' Claim*)

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above and further state as follows:

84.     As a direct and proximate result of the injuries sustained by minor Plaintiff Quinton Elijah Snowden as set forth hereinabove, adult Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden have suffered and will continue to suffer throughout minor Plaintiff's majority, damages from, but not limited to, expenses for medical services, medical equipment, home modifications, caregivers, supplies and other related expenses as well as, a loss of financial support.

WHEREFORE, Plaintiffs Teresa A. Morring and Deshaunia Q. Snowden, demand judgment of and against Defendant, Children's National Medical Center, in the full sum of Ten Million Dollars ($10,000,000.00) plus costs and interest.

  /S/ Anthony Newman                                   
Anthony Newman, Esquire
NEWMAN, McINTOSH & HENESSEY, LLP
7315 Wisconsin Avenue, Suite 700E
Bethesda, Maryland 20814
(301) 654-3400


  /S/ Ira Sherman                                      
Ira Sherman, Esq.
Joseph Cammarata, Esq.
Alan Segal, Esq.
CHAIKIN & SHERMAN, PC
1232 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 659-8600
**Attorneys for Plaintiffs**

-21-

**<u>JURY DEMAND</u>**

Plaintiffs request trial by jury as to all counts herein.

/S/ Anthony Newman_____
Anthony G. Newman

## I (a) PLAINTIFFS

Teresa A. Morring and Deshaunia Q. Snowden, as parents and next friends of Quinton Elijah Snowden

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888
      (EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Anthony G. Newman, Esq.
Newman, McIntosh & Hennessey, LLP
7315 Wisconsin Avenue, Suite 700E
Bethesda, MD 20814
(301) 654-3400

## DEFENDANTS

Children's National Medical Center

CASE NUMBER   1:06CV02036

JUDGE: Rosemary M. Collyer

DECK TYPE: Personal Injury/Malpractice

DATE STAMP: 11/29/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ◉ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A–N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A.** *Antitrust*

     410 Antitrust

◉ **B.** *Personal Injury/ Malpractice*

     310 Airplane
     315 Airplane Product Liability
     320 Assault, Libel & Slander
     330 Federal Employers Liability
     340 Marine
     345 Marine Product Liability
     350 Motor Vehicle
     355 Motor Vehicle Product Liability
     360 Other Personal Injury
   x   362 Medical Malpractice
     365 Product Liability
     368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

     151 Medicare Act

**Social Security:**
     861 HIA ((1395ff)
     862 Black Lung (923)
     863 DIWC/DIWW (405(g)
     864 SSID Title XVI
     865 RSI (405(g)
**Other Statutes**
     891 Agricultural Acts
     892 Economic Stabilization Act
     893 Environmental Matters
     894 Energy Allocation Act
     890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ○ E. General Civil (Other)     OR     ○ F. Pro Se General Civil

**Real Property**
     210 Land Condemnation
     220 Foreclosure
     230 Rent, Lease & Ejectment
     240 Torts to Land
     245 Tort Product Liability
     290 All Other Real Property

**Personal Property**
     370 Other Fraud
     371 Truth in Lending
     380 Other Personal Property Damage
     385 Property Damage Product Liability

**Bankruptcy**
     422 Appeal 28 USC 158
     423 Withdrawal 28 USC 157

**Prisoner Petitions**
     535 Death Penalty
     540 Mandamus & Other
     550 Civil Rights
     555 Prison Condition

**Property Rights**
     820 Copyrights
     830 Patent
     840 Trademark

**Federal Tax Suits**
     870 Taxes (US plaintiff or defendant
     871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
     610 Agriculture
     620 Other Food &Drug
     625 Drug Related Seizure of Property 21 USC 881
     630 Liquor Laws
     640 RR & Truck
     650 Airline Regs
     660 Occupational Safety/Health
     690 Other

**Other Statutes**
     400 State Reapportionment
     430 Banks & Banking
     450 Commerce/ICC Rates/etc.
     460 Deportation

     470 Racketeer Influenced & Corrupt Organizations
     480 Consumer Credit
     490 Cable/Satellite TV
     810 Selective Service
     850 Securities/Commodities/ Exchange
     875 Customer Challenge 12 USC 3410
     900 Appeal of fee determination under equal access to Justice
     950 Constitutionality of State Statutes
     890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
◉ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
28 U.S.C. 1332 Diversity of Citizenship. Jurisdiction of this court is based on diversity of jurisdiction and the amount in controversy exceeds the limit.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 100,000,000.00   Check YES only if demanded in complaint
JURY DEMAND: YES ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 11/28/06  11/29/06   SIGNATURE OF ATTORNEY OF RECORD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

JTC